#8432
$150
FILED

02 JUN 11 PM 2:32
CLERK U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

**THE UNITED STATES DISTRICT COURT**
**IN AND FOR THE MIDDLE DISTRICT OF FLORIDA**

LEE AZAR,

Plaintiff,

v.

KENNETH DICK, RBC DOMINION SECURITIES, INC.,

Defendants,

CIVIL ACTION NO.
6:02-cv-672-ORL-22JGG

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, by and through his undersigned counsel, alleges for his complaint as follows:

## THE PARTIES

1. Plaintiff Lee Azar ("Azar" or "Plaintiff") is and has been a resident of Orlando, Florida since October 1991.

2. Defendant Kenneth Dick ("Dick") is and has been a citizen and resident of Ontario, Canada at all relevant times. Defendant Dick represented himself to be a broker with the Toronto and Burlington, Ontario offices of RBC Dominion Securities, Inc.

3. Defendant RBC Dominion Securities, Inc. ("RBC Dominion") provides investment, brokerage, and related services. RBC Dominion is a subsidiary of Royal Bank of Canada. RBC Dominion has a branch office at First Canadian Place, King and Bay Streets, Toronto, Ontario.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, 28 U.S.C. §§ 1331 and 1332, and 28 U.S.C. § 1367. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. §1332(a)(2) because the amount in controversy exceeds $75,000 and there is complete diversity of citizenship between plaintiff and defendants.

5. Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b) and (c) because substantial portions of the securities transactions complained of herein occurred in this district and defendants communicated with plaintiff in this District by means of the mail and telephone to offer to sell and sell securities to plaintiff.

## FACTUAL BACKGROUND

6. This action is brought by Azar to obtain relief for the unauthorized sale of securities by Defendants Dick and RBC Dominion without registration as a broker under Florida and federal law. Plaintiff further seeks to recover for Defendants' fraudulent inducement of Plaintiff to enter into and continue business relations with Defendants and fraudulent concealment that Defendants were unlicensed in the United States.

7. Since October 1991, Plaintiff has been a resident of Orlando, Florida. Plaintiff Azar is a U.S. citizen born in Orlando, Florida and has resided continuously in Florida from 1991 to the present.

8. At various times between 1991 and 1994, Plaintiff Azar acted as the designated trader for a Canadian corporation, Classic Performers, of which Plaintiff Azar was the sole shareholder. In addition,

Plaintiff had a personal account with Defendant Dick while he worked for another brokerage firm -- Midland Walwyn in Canada. Defendant Dick telephoned Plaintiff Azar in Florida to make offers to sell and buy securities on behalf of both of these accounts.

9. In approximately April 1994, Defendant Dick contacted Plaintiff Azar and advised him that Midland Walwyn was developing an "in house policy" that would prohibit its brokers from trading directly with U.S. residents. Defendant Dick advised Plaintiff that he had a friend who worked for a company called Hemisphere Management that established Bermuda and Cayman Islands corporations for some of Defendant Dick's clients who wished to retain their business relationship with Defendant Dick if and/or when the Midland Walwyn "in house policy" became effective. Plaintiff Azar advised Defendant Dick that he could take his accounts to another Canadian brokerage firm, with whom Azar had an existing relationship, and could continue trading without the need for establishing a Bermuda or Cayman Islands corporation. Plaintiff Azar was trading at this time with Defendant Dick and other Canadian brokers without ever being advised or being aware that they were not licensed to act as brokers in the United States or Florida or that such unlicensed brokerage activity was against the law. Neither Defendant Dick nor Defendant RBC Dominion advised Plaintiff Azar at any time that they were not licensed to offer securities to Plaintiff in Florida or that the making of such offers by unlicensed brokers was illegal. Instead, Defendant Dick assured Plaintiff Azar that by establishing a Cayman Islands corporation, Plaintiff Azar could continue to trade with Defendant Dick and Midland Walwyn from his Florida residence, thereby maintaining their five year broker-client relationship. Plaintiff would not have followed Defendant Dick's direction to set up the Cayman Islands corporation if he knew that Defendant Dick was unlicensed to trade with him.

10. In order to carry out Defendant Dick's scheme to continue to garner commissions for trades with Plaintiff Azar, Defendant Dick directed Plaintiff to meet him in the Cayman Islands where he introduced his friend who facilitated the establishment of Morgan Marketing Ltd. in 1994. Morgan Marketing Ltd. was funded with the assets from Plaintiff Azar's individual account with Midland Walwyn and his Classic Performers account. Morgan Marketing was created at Defendant Dick's recommendation so that Defendant Dick could retain Plaintiff's account and continue to reap commissions without obtaining any necessary license(s) to offer and sell securities in the United States.

11. In approximately April 1998, when Defendant Dick moved to the Toronto offices of Defendant RBC Dominion, he executed, without the knowledge of Plaintiff Azar, corporate trading resolutions (true and correct copies of which are attached hereto as Exhibit A) on behalf of Morgan Marketing Ltd. Between June 11, 1998 and December 31, 2000 (the "Relevant Period"), Defendants Dick and RBC Dominion continued to offer to sell and sold securities to Plaintiff Azar while Plaintiff Azar lived in Florida and without registering as a dealer or associated person under applicable Florida or United States law. Plaintiff Azar would have ceased trading with Defendants Dick and RBC Dominion if he knew Defendants were unlicensed.

12. Defendant RBC Dominion did not have in place adequate policies or procedures to monitor the illegal trading activity engaged in by Defendant Dick. Defendant Dick, as a manager of the office in which he worked, was able to trade with Plaintiff Azar in Florida, making calls on a daily and sometimes hourly basis to Plaintiff Azar without being registered/licensed in Florida or the United States. Defendant RBC Dominion failed to adequately review and monitor the accounts, including the account of Plaintiff Azar which Defendant Dick transferred from Midland Walwyn to Defendant RBC Dominion. In conducting

business with Plaintiff Azar during the Relevant Period, Defendants Dick and RBC Dominion used telephones, telecopy machines and other jurisdictional means to communicate and negotiate securities transactions with Plaintiff Azar in Florida.

13. Defendants Dick and RBC Dominion offered to sell, sold and negotiated transactions in securities with Plaintiff Azar who was at all relevant times and is a resident of Florida. During the Relevant Period, Plaintiff Azar directed the purchase from Defendants Dick and RBC Dominion of various securities.

14. Defendants Dick and RBC Dominion are not currently and were not during the Relevant Period registered with the State of Florida Office of the Comptroller, Department of Banking and Finance as required pursuant to Chapter 517, Florida Statutes, or with the Securities Exchange Commission to offer or sell securities in Florida or the United States.

15. During the Relevant Period, Plaintiff Azar purchased in excess of $2 million worth of securities from Defendants Dick and RBC Dominion through Morgan Marketing. Plaintiff is entitled to elect to rescind any of the transactions with Defendants for which Plaintiff has not sold the securities and Plaintiff is prepared to return any and all such securities, in return for the purchase price and interest, less any income received by Plaintiff on the security. Plaintiff is also entitled to recover as damages, the difference between the amount paid for the security and the amount received on the sale of the security and interest, less any income received by Plaintiff on the security. Plaintiff has listed in Exhibit B hereto the transactions of which he is aware in which he suffered a loss during the period from June 11, 2000 through December 31, 2000 for which he seeks damages pursuant to Florida statutes and the federal securities laws. However, during the course of his relationship with Defendants Dick and RBC Dominion, Plaintiff did not receive copies of account statements or other pertinent documentation and this damage figure has been

reconstructed from incomplete records. The full amount of Plaintiff's damages will only be ascertainable after more complete discovery and a more complete analysis of damages. At this time, Plaintiff is able to estimate that his damages will be in excess of $1 million under the Florida and federal statutes and that damages under common law fraud will be in excess of $2 million.

16. This action is brought within two years of the time when Plaintiff became aware of the fact that Defendants were not registered brokers in Florida or the United States and that Defendants Dick and RBC Dominion had violated the law by creating and using Morgan Marketing as a deceptive device to conduct trades with Plaintiff Azar without being properly licensed in Florida or the United States. Plaintiff Azar seeks to recover for losses sustained and transactions from June 11, 1998 through December 31, 2000 under his common law fraud claims; from June 11, 1999 through December 31, 2000 under his claims pursuant to Exchange Act Sec. 29(b); and from 11, 2000 through December 31, 2000 under his claims pursuant to Florida Statutes Ch. 517.

17. During the period from June 11, 1998 through December 31, 2000, Plaintiff Azar received no account statements regarding the status of his account or the level of trading being engaged in by Defendants Dick and RBC Dominion. In addition, Plaintiff was unaware that Defendant Dick had caused Defendant RBC Dominion to enter into Corporate Trading Resolutions that did not list Plaintiff Azar as an authorized trading officer. Plaintiff Azar consistently believed, as he was told by Defendant Dick, that he was trading for his own benefit and that there was nothing illegal about Plaintiff carrying out securities transactions with Defendants Dick and RBC Dominion.

18. On or about April 19, 2000, the accounting firm of Ernst & Young was appointed controller of Zephyr International, the sole shareholder and director of Morgan Marketing and, as

controller, Ernst & Young required that all transactions involving the assets of Morgan Marketing, including trading in securities owned by Morgan Marketing, be pre-approved by Ernst & Young. Despite these restrictions, Defendants Dick and RBC Dominion Securities continued to trade stocks in the Morgan Marketing account without the authorization of Ersnt & Young and in many instances based on offers made to and/or instructions received from Plaintiff Azar from Florida.

19. Further, during this period, Defendants Dick and RBC Dominion engaged in numerous transactions that were not authorized by Plaintiff Azar. In fact, from mid-October 2000 through December 31, 2000, Defendant Dick advised Plaintiff Azar that his account had been frozen because Defendant RBC Dominion Securities was requiring that its Cayman Islands office take over responsibility for Plaintiff Azar's Morgan Marketing account. However, Defendant Dick continued to trade the securities in the account and sustained substantial losses as reflected in Exhibit B hereto. Defendant Dick refused to take any orders or sales instructions from plaintiff during this "freeze" period and instructed his staff not to communicate with Plaintiff. By February, 2001, Defendants had transferred Plaintiff Azar's account to the Cayman Islands Office of Defendant RBC Dominion.

20. In approximately July 2001, Plaintiff learned that Defendants RBC Dominion and Dick were not licensed to offer securities in the United States. Over a course of time between July 2001 and January 2002, Plaintiff Azar also discovered evidence that Defendants: (a) had never designated in writing that Plaintiff Azar was an authorized trader for the Morgan Marketing account but Defendants, instead, purported to have accepted an oral designation of Plaintiff Azar as an authorized trader for the account from Zephyr International; (b) had acted illegally by trading with Plaintiff Azar; (c) had fraudulently misrepresented Defendants' ability to trade with Plaintiff; (d) had fraudulently induced Plaintiff Azar to

contribute assets and to continue to contribute assets and maintain the Morgan Marketing account; (e) had fraudulently conducted trading in the Morgan Marketing account during the period that Defendants advised Plaintiff that the account was "frozen"; and (f) had fraudulently concealed account statements and other documentation reflecting the activity in the Morgan Marketing account.

## COUNT I

**For Violation of Section 29(b) of the Exchange Act, 15 U.S.C. § 78(o) and (cc)(B)**

21. Plaintiff hereby incorporates by reference and realleges the allegations set forth in paragraphs 1 through 20.

22. Defendants Dick and RBC Dominion violated Sections 15(a) and 29(b) of the Exchange Act, 15 U.S.C. § 78(o) and (cc)(B) by failing to register as a broker/dealer in the United States. Defendants utilized the telephone wires, mail and other jurisdictional means to solicit and effect sales in the United States.

23. As a result of the failure of Defendants Dick and RBC Dominion to properly register as a dealer or associated person, under Section 29(b), Plaintiff is entitled to elect to rescind each and every purchase made from Defendants and to recover either the full purchase price and interest, less any income received on the security or to recover the difference between the amount paid for the security and the amount received by Plaintiff on the sale of the security together with interest and less any income received for the period from June 11, 1999 to December 31, 2000.

## COUNT II

### For Violation of Chapter 517.12 of Title 33 of the Florida Statutes

24. Plaintiff hereby incorporates by reference and realleges the allegations set forth in paragraphs 1 through 23.

25. Defendants Dick and RBC Dominion violated Chapter 517.12 of Title 33 of the Florida Statutes by failing to register as a dealer or associated person in Florida.

26. As a result of the failure of Defendants Dick and RBC Dominion to properly register as a dealer or associated person under Florida law, Plaintiff, pursuant to Chapter 517.211 of Title 33 of the Florida Statutes, is entitled to elect to rescind each and every purchase made from Defendants and to recover either the full purchase price and interest, less any income received on the security or to recover the difference between the amount paid for the security and the amount received by Plaintiff on the sale of the security together with interest and less any income received for the period from June 11, 2000 to December 31, 2000.

27. To date, Plaintiff has not received any offer, in writing or otherwise, by Defendants to refund the full amount paid on Plaintiff's behalf with respect to any of the securities at issue in this complaint, plus interest and less any income received by Plaintiff. Nor, has Plaintiff received any offer, in writing or otherwise, by Defendants to pay the difference between the amount paid for any of the securities at issue in this case and the amount received by the purchaser on the sale of such security plus interest and less any income received by Plaintiff.

**COUNT III**

**For Common Law Fraud and Negligent Misrepresentation**

28. Plaintiff hereby incorporates by reference and realleges the allegations set forth in paragraphs 1 through 27.

29. Defendants Dick and RBC Dominion were aware that Plaintiff was a resident of Florida. They knowingly communicated with him in Florida and knew or were grossly reckless in disregarding that Plaintiff was a resident of Florida. Defendants did not disclose to Plaintiff that they were not licensed to sell securities in Florida or the United States. Defendants acted solely for their own gain to garner commissions from Plaintiff's transactions. Had Plaintiff known that Defendants were unlicensed to act as brokers in the United States, he would not have transacted business with them.

30. Defendants also fraudulently concealed their trading in Plaintiff's account and engaged in trading that was not authorized by plaintiff. As a result, plaintiff suffered losses and incurred commissions that he would not otherwise have incurred.

31. Plaintiff has been injured by Defendants' wrongful conduct and is entitled to recover all of his losses and punitive damages because Defendants' conduct was wanton and willful. Plaintiff seeks recovery for his losses sustained between June 11, 1998 and December 31, 2000.

**WHEREFORE**, Plaintiff demands judgment as follows:

(a) Awarding rescissory relief and/or money damages in favor of Plaintiff Azar for all of the transactions listed on Exhibit B hereto and any others reflected in RBC Dominion's corporate records which were made by Defendants Dick and RBC Dominion in violation of the registration requirements of

Florida and federal law, together with pre-judgment interest from the day of the wrongs to the day of judgment herein;

    (b)    Awarding Plaintiff his costs and expenses for this action, including reasonable attorneys' and experts' fees; and

    (f)    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

**LAW OFFICES OF BERNARD M. GROSS, P.C.**
**BY:**

**Bernard M. Gross**
**Deborah R. Gross – Trial Counsel**
**Christopher T. Reyna**
1500 Walnut Street, 6th Floor
Philadelphia, PA 19102
(215) 561-3600

**RICHARD D. CONNOR, JR., P.A.**
**BY:**

**Richard D. Connor, Jr.**
Florida Bar No. 606626
955 South Orlando Avenue
Winter Park, FL 32789-4848
407-740-7163

**Attorneys for Plaintiff**




# CORPORATE TRADING RESOLUTIONS

Certified Copy of Resolutions Passed by the Directors

of Merlan Marketing Ltd. (Print Corporate Name) (the "Corporation")

"RESOLVED that:

1. The Corporation establish and maintain with RBC Dominion Securities Inc. and/or any of its affiliated companies ("RBC DS") one or more accounts to deal in securities, commodity, financial or index futures contracts, options on securities, and options on commodity, financial or index futures contracts.

2. Account dealings may be on a cash settlement or margin basis and may include short sales or uncovered writings.

3. **TRADING OFFICERS.** Any one of the following officers, Lewis Rowe, Director (Print Title) (the "Trading Officers"), be and each is authorized to give orders or trading instructions to RBC DS, whether in writing or not, in respect of account dealings for, on behalf of and in the name of the Corporation, provided that, for greater certainty, any person who is designated as a Trading Officer, unless also designated as a Signing Officer, shall not be authorized to give instructions in respect of matters referred to in 4 below.

4. **SIGNING OFFICERS.** Any 1 of the following officers, Lewis Rowe, Director (Print Title) (the "Signing Officers") are hereby authorized:

(a) to execute and deliver for, on behalf of and in the name of the Corporation any and all agreements, consents, letters of instruction or other documents required by RBC DS for the establishment, reclassification or operation of any account;

(b) to withdraw for, on behalf of and in the name of the Corporation from any of its accounts any monies or securities contained in such accounts.

5. The Secretary of the Corporation is hereby directed to notify RBC DS in writing of the persons who hold the offices designated in paragraph 3 and 4 and to provide RBC DS with a specimen of their signatures, and the Secretary or any Signing Officers be and are hereby authorized from time to time to advise RBC DS of the persons who at such time hold such offices.

6. RBC DS shall be entitled to act and rely upon the actions, orders and trading instructions of the Trading Officers and the Signing Officers taken or given in accordance with these resolutions without making or continuing any investigations or inquiries into the propriety of such actions, orders and instructions.

7. The foregoing resolutions shall remain in full force and effect until amended or cancelled and notice of such amendment or cancellation has been given in writing to the Manager of RBC DS's Compliance Department."

* * * * * * * * * * * * * * *

## CERTIFICATE

I, Chavannise Christiani, the Secretary of Merlan Marketing Ltd. (the "Corporation") do hereby certify that the foregoing is a true and correct copy of resolutions duly passed by the directors of the Corporation, that such resolutions are in full force and effect, unamended, that the Corporation has the corporate power and authority to establish and maintain one or more accounts with RBC DS and such power is not restricted by any provision contained in the Corporation's articles or by-laws, that the persons named below are the Trading Officers and Signing Officers of the Corporation and that set forth opposite their names are their true signatures.

| OFFICER'S TITLE | NAME | SIGNATURE |
|---|---|---|
| Director | Lewis Rowe | [signature] |
| Secretary | Chavannise Christiani | [signature] |
| | | |
| | | |

Dated 4th April 1998 , 19___ [signature] c/s
Secretary

*Note: If the Corporation has no seal, then this should be executed by a Signing Officer in addition to the Secretary.

MAY-20-2002 04:47 PM CRU 4073592163 P.34





FOR OFFICE CUSTOMER IDENTIFICATION ONLY

RBC DOMINION SECURITIES

# CORPORATE TRADING RESOLUTIONS

Certified Copy of Resolutions Passed by the Directors

of Morgan Marketing (Print Corporate Name) (the "Corporation")

"RESOLVED that:

1. The Corporation establish and maintain with RBC Dominion Securities Inc. and/or any of its affiliated companies ("RBC DS") one or more accounts to deal in securities, commodity, financial or index futures contracts, options on securities, and options on commodity, financial or index futures contracts.

2. Account dealings may be on a cash settlement or margin basis and may include short sales or uncovered writings.

3. **TRADING OFFICERS.** Any one of the following officers, Lewis Rowe, Director (Print Title) (the "Trading Officers"), be and each is authorized to give orders or trading instructions to RBC DS, whether in writing or not, in respect of account dealings for, on behalf of and in the name of the Corporation, provided that, for greater certainty, any person who is designated as a Trading Officer unless also designated as a Signing Officer, shall not be authorized to give instructions in respect of matters referred to in 4 below.

4. **SIGNING OFFICERS.** Any 1 of the following officers, Lewis Rowe, Director (Print Title) (the "Signing Officers") are hereby authorised:

(a) to execute and deliver for, on behalf of and in the name of the Corporation any and all agreements, consents, letters of instruction or other documents required by RBC DS for the establishment, reclassification or operation of any account;

(b) to withdraw for, on behalf of and in the name of the Corporation from any of its accounts any monies or securities contained in such accounts.

5. The Secretary of the Corporation is hereby directed to notify RBC DS in writing of the persons who hold the offices designated in paragraph 3 and 4 and to provide RBC DS with a specimen of their signatures, and the Secretary or any Signing Officers be and are hereby authorized from time to time to advise RBC DS of the persons who at such time hold such offices.

6. RBC DS shall be entitled to act and rely upon the actions, orders and trading instructions of the Trading Officers and the Signing Officers taken or given in accordance with these resolutions without making or continuing any investigations or inquiries into the propriety of such actions, orders and instructions.

7. The foregoing resolutions shall remain in full force and effect until amended or cancelled and notice of such amendment or cancellation has been given in writing to the Manager of RBC DS's Compliance Department."

* * * * * * * * * * * * * * *

## CERTIFICATE

I, Charmaine Christian, the Secretary of Morgan Marketing Ltd. (the "Corporation") do hereby certify that the foregoing is a true and correct copy of resolutions duly passed by the directors of the Corporation, that such resolutions are in full force and effect, unamended, that the Corporation has the corporate power and authority to establish and maintain one or more accounts with RBC DS and such power is not restricted by any provision contained in the Corporation's articles or by-laws, that the persons named below are the Trading Officers and Signing Officers of the Corporation and that set forth opposite their names are their true signatures.

| OFFICER'S TITLE | NAME | SIGNATURE |
|---|---|---|
| Director | Lewis Rowe | x [signature] |
| Secretary | Charmaine Christian | x [signature] |
| | | |
| | | |

Dated ____________, 19__. x [signature] c/s Secretary

FOR OFFICE CUSTOMER IDENTIFICATION ONLY

(d) It is the express wish of the parties that this Agreement and all documents, notices and other communications relating to the operation of the Account be in English. [illegible] qui concernent l'opération du Compte soient rédigés en langue anglaise.

(e) The headings used in this Agreement are for convenience of reference only and shall not in any way affect the interpretation of this Agreement.

(f) This Agreement shall be construed in accordance with the laws of the jurisdiction in which the Customer's Account is maintained or, where the Customer has more than one Account, this Agreement shall be construed separately for each Account in accordance with the laws of the jurisdiction in which the Account is maintained.

(g) Whenever this Agreement enables RBC DS to alternative courses of action, RBC DS shall be entitled to choose any, none or all of such alternatives in its sole and unfettered discretion.

21. EFFECTIVE TIME. This Agreement will be effective and binding upon the Customer and RBC DS from the time at which RBC DS first acts upon the instructions of the Customer.

22. DEFINED TERMS. For the purpose of this Agreement:

(a) "Securities" includes shares, share certificates, scrip, [illegible], options, rights, warrants, rights, bonds, debentures, notes and any other securities of any kind whatsoever, [illegible] and futures contracts, options on [illegible] and options on [illegible] and futures contracts;

(b) "RBC Dominion Securities" or "RBC DS" means any or all of the RBC Dominion Securities Inc., RBC Dominion Securities (Alberta) Inc., and RBC Dominion Securities (Asia) Limited, depending on which have in fact established an Account and acted upon the Customer's instructions; and

(c) "Regulatory Authorities" means any relevant securities commission, exchange, market, clearing corporation or association of brokers or dealers.

23. CERTIFICATION BY CUSTOMER. The Customer hereby certifies that the Customer has read and understood this Agreement and acknowledges receipt of a copy of this Agreement.

Morgan Marketing
Account Name (Print)

P.O. Box 1561 Zepher House
Account Address (Print)

Mary St. Grand Cayman, Cayman Islands BWI
City Province Postal Code

DATED this 3RD day of April, 19 98

x [signature]
Customer(s) Signature(s)

**EXHIBIT B**

| Name | Bot | Shares | Price | Tot. | Sold | Shares | Price | Tot. | Loss |
|---|---|---|---|---|---|---|---|---|---|
| Chinadotcom Corp | 5/23/00 | 1000 | 31.312 | 31412.5 | 5/25/00 | 1000 | 28.375 | 28274.04 | 3138.46 |
| Genzyme | 5/19/00 | 2000 | 19.062 | 38325 | 5/25/00 | 100 | 19.5 | 1944.93 | |
| | | | | | 5/25/00 | 1900 | 19 | 36098.79 | 281.28 |
| Chinadotcom Corp. | 5/25/00 | 1000 | 27.75 | 27850 | 6/6/00 | 1000 | 24.25 | 24049.19 | 3800.81 |
| Messagemedia | | 10000 | | 64918.75 | 8/4/00 | 10000 | 3.625 | 36048.77 | 28869.98 |
| Titan Corp | 8/11/00 | 1000 | 29.937 | 30037.50 | 8/11/00 | 1000 | 29.337 | 29226.52 | 810.98 |
| Titan Corp | 8/22/00 | 2000 | 26.406 | 52912.5 | 8/22/00 | 2000 | 23.75 | 47398.41 | 5514.09 |
| Huntingdon Life Sci | | 10000 | | 30087.5 | 8/29/00 | 10000 | 2.812 | 27924.06 | 2163.44 |
| ATI Technologies | | 3000 | | 29262.5 | 9/14/00 | 3000 | 9.125 | 27174.08 | 2088.42 |
| Advanced Radio Telecom Systems | 9/22/00 | 2000 | 9.062 | 18225 | 9/25/00 | 2000 | 8.187 | 16174.45 | 2050.55 |
| Titan Corp | 8/22/00 | 2000 | 26.406 | 52912.5 | 9/25/00 | 2000 | 19.625 | 39048.67 | 13863.83 |
| Open Market Inc. | | 7000 | | 47154.62 | 10/13/00 | 900 | 3.406 | 2865.52 | |

| Name | Bot | Shares | Price | Tot. | Sold | Shares | Price | Tot. | Loss |
|---|---|---|---|---|---|---|---|---|---|
| Open Market | | | | | 10/13/00 | 6100 | 3.758 | 22749.92 | 21539.18 |
| Internet Pictures | 10/2/00 | 2000 | 6.062 | 12125 | 10/20/00 | 2000 | 3.75 | 7299.75 | |
| | 10/2/00 | 3000 | 6.031 | 18293.75 | 10/23/00 | 3000 | 1.75 | 5149.82 | 17969.18 |
| Mattson Tech. | 10/27/00 | 2000 | 11.812 | 23725 | 10/31/00 | 2000 | 11.25 | 22299.24 | 1425.76 |
| Legato Sys. Inc. | | 3000 | | 33598.59 | 10/31/00 | 3000 | 9.468 | 28205.29 | 5393.30 |
| Prodigy Comm. | | 4700 | | 57920 | 11/1/00 | 1600 | 4.625 | 7399.75 | |
| | | | | | 11/1/00 | 3100 | 4.75 | 14592.58 | 35927.67 |
| Pilot Network | | 14100 | | 83983.71 | 11/10/00 | 5700 | 3.379 | 19107.43 | |
| | | | | | 11/10/00 | 3400 | 3.07 | 10440.25 | |
| | | | | | 11/10/00 | 4000 | 3.156 | 12624.52 | |
| | | | | | 11/10/00 | 1000 | 3.25 | 3149.89 | 38661.62 |
| LAM Research | 11/20/00 | 5000 | 18.625 | 93225 | 11/28/00 | 5000 | 17.062 | 85209.65 | 8015.35 |
| Kana Comm. Inc. | 11/24/00 | 5000 | 17.5 | 87600 | 11/24/00 | 5000 | 17.161 | 85703.37 | 1896.30 |
| Advanced Radio | | 2000 | | 8189.23 | 11/28/00 | 2000 | 2.312 | 4524.84 | 3664.39 |
| Answerthink Inc. | 11/27/00 | 2000 | 12.125 | 24250 | 11/28/00 | 1000 | 8 | 7899.73 | |
| | 11/27/00 | 3000 | 12.75 | 38450 | 11/28/00 | 4000 | 7.843 | 31373.91 | 23426.36 |

| Name | Bot | Shares | Price | Tot. | Sold | Shares | Price | Tot. | Loss |
|---|---|---|---|---|---|---|---|---|---|
| Advanced Tissue | | 10000 | | 46303.39 | 11/22/00 | 2100 | 4.272 | 8871.49 | |
| | | | | | 11/28/00 | 7900 | 4.116 | 32520.78 | 4911.12 |
| Kana Comm | 11/24/00 | 5000 | 17.5 | 87600 | 11/28/00 | 5000 | 15 | 74897.5 | 12702.50 |
| LTX Corp | 11/1/00 | 2000 | 14.562 | 29225 | 11/3/00 | 2000 | 14.5 | 28899.03 | |
| | 11/2/00 | 2000 | 13.75 | 27600 | 11/28/00 | 2000 | 13.25 | 26399.1 | 1586.87 |
| Metromedia Fiber | 11/13/00 | 1000 | 21.031 | 21031.25 | 11/28/00 | 2000 | 14.3 | 28599.04 | |
| | 11/13/00 | 1000 | 21.312 | 21412.5 | 11/28/00 | 2000 | 14.875 | 29649 | |
| | 11/15/00 | 2000 | 18.937 | 37975 | | | | | 22170.21 |
| Maxtor | | 10000 | | 90086.29 | 11/28/00 | 5000 | 8.375 | 41873.6 | |
| | | | | | 11/28/00 | 5000 | 8.375 | 41773.6 | 6439.09 |
| Nexell Therapeutics | | 2000 | | 18303.82 | 11/28/00 | 2000 | 4.562 | 9024.69 | 9279.11 |
| Robotic Vision | | 15000 | | 147515.53 | 11/28/00 | 5000 | 3.875 | 19274.35 | |
| | | | | | 11/28/00 | 10000 | 3.867 | 38676.81 | 89564.37 |
| Xicor | | 10000 | | 113479 | 11/28/00 | 1000 | 5.875 | 5774.8 | |
| | | | | | 11/28/00 | 4000 | 5.796 | 23186.71 | |
| | | | | | 11/28/00 | 5000 | 5.75 | 28749 | 55768.49 |
| Oxford Glycosciences | | 3166 | | 479632.67 | 11/29/00 | 3166 | 18.573 | 57810.83 | 421821.84 |
| Independent Engy | | 5000 | | 32937.5 | 11/30/00 | 5000 | .003 | 13.49 | 32924.01 |

| Name | Bot | Shares | Price | Tot. | Sold | Shares | Price | Tot. | Loss |
|---|---|---|---|---|---|---|---|---|---|
| Alterra Corp | 12/1/00 | 3000 | 27.427 | 82381.25 | 12/1/00 | 3000 | 25.937 | 77709.89 | 4671.36 |
| Kana Comm. | 12/1/00 | 2000 | 16.375 | 32850 | 12/4/00 | 2000 | 14.75 | 29399 | |
| | 12/4/00 | 2000 | 15.125 | 30350 | 12/5/00 | 2000 | 14.25 | 28399.03 | 5401.97 |
| Motorola | 12/4/00 | 3000 | 20.875 | 62725 | 12/5/00 | 3000 | 19.875 | 59523.01 | 3201.99 |
| Oracle Corp | 12/4/00 | 2000 | 23.375 | 46850 | 12/5/00 | 2000 | 22.25 | 44398.51 | 2451.49 |
| Terayon Comm Sys | 12/12/00 | 2000 | 17.867 | 35834.38 | 12/21/00 | 2000 | 6.196 | 12293.3 | 23541.08 |
| **TOTAL** | | | | | | | | | $772,552.65 |